UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

CIVIL ACTION NO.

| | | |
|---|---|---|
| MICRO ESTIMATING SYSTEMS, INC. | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | COMPLAINT |
| | ) | |
| LAURENTEC LLC, AND  MTI SYSTEMS, INC. | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

### The Parties

1. The Plaintiff Micro Estimating Systems, Inc. ("Micro")  is a Wisconsin corporation with a usual place of business at 200 South Executive Drive, Suite 101 Brookfield, WI.

2. The Defendant Laurentec, LLC ("Laurentec") is a South Carolina Limited Liability Corporation with a usual place of business at 2745 W 5th North Street, Summerville, SC.

3. The Defendant MTI Systems, Inc.("MTI") is a Massachusetts corporation with a usual place of business at 59 Interstate Dr., West Springfield, Hampden County, MA.

### Jurisdiction

4. This Court has subject matter jurisdiction over this matter based on diversity of citizenship pursuant to 29 U.S.C. §1332(a)(1) and the fact that the amount in controversy exceeds the statutory limit under 28 U.S.C. §1332(b).  Specifically, the corporate Plaintiff and the corporate Defendants are citizens or residents of different states and the amount

1

in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars.

5. This Court also has original subject matter jurisdiction over the above captioned matter pursuant to 28 U.S.C. §1331 in that the matter involves a Federal Question.

6. Venue is proper in this Division of this District pursuant to 28 U.S.C. §1391.

## Facts Common to All Counts

### i. The software purchase transaction.

7. Micro develops, markets and licenses cost estimating software for engineering, manufacturing, wholesale and retail customers in the tooling industry.

8. On or about September 2, 2011, after several months of communications, Defendant Laurentec placed an order to license Micro's software. This order included installation, training and technical support, limited to the terms of the agreement. Laurentec's Order totaled $32,785, of which it paid $16,392.50 or fifty percent by credit card and the balance would be paid in three monthly installments of $5,464.16. A true and accurate copy of the Purchase Order from Laurentec is attached at Exhibit A, hereto.

9. On or about September 2, 2011, Micro shipped software DVDs with the agreed upon products, four licenses for MicroEstimating V12 and SolidWorks 2011 to Laurentec. It is not disputed that Laurentec received the software and licenses.

10. On or about September 10, 2011, Laurentec installed the software for the first time and began to receive the agreed upon training sessions.

11. On October 19, 2011, Laurentec's Micro software was operational.

12. On October 21, 2011, Laurentec made an additional payment on the account of

$5,464.16, again by credit card.

13. On November 2, 2011, Laurentec made another payment on the account of $5,464.16.

14. In Mid-November, 2011, Laurentec inquired about obtaining additional functionality, referred to as E2 exporting functionality, which it had not originally ordered. The options it sought would have cost an additional $3,500, but Laurentec had chosen not to purchase the option.

15. Laurentec now requested that Micro include that functionality without cost, or they would "not want Micro anymore".

16. Micro agreed to grant Laurentec the concession, and installed the E2 option without charge.

17. On December 5, 2011, Laurentec made its final payment to Micro in the amount of $5,464.16.

18. From the initial sale date to the final payment date, Laurentec received approximately 12 hours of training from Micro, as agreed.

19. From the initial sales date to the final payment date, Laurentec reported to Micro that it had installed, uninstalled and reinstalled the Micro programs on several Laurentec computers.

### ii. The untimely and unjustified demand for refund.

20. On December 15, 2011, Laurentec notified Micro that they wished to return Micro's products for full refunds. Laurentec informed Micro that its employees did not like using Micro's products and didn't feel that it was as fast as they'd like it.

21. On December 20, 2011, Laurentec failed to attend a scheduled training with Micro.

22. On December 21, 2011, Laurentec requested a full refund, to be credited back to Laurentec's credit card.

23. Laurentec was informed that Micro did not allow refunds after four months of use.

24. In response to Micro's refusal to accept the untimely and unjustified return of the software, Laurentec filed a dispute with its credit card company, American Express, making false claims besmirching both the operability of the software and Micro's support and warranty.

25. American Express rejected Laurentec's dispute and released the payment funds to Micro.

26. Notwithstanding American Express's actions, Laurentec has again filed the same dispute seeking to reverse the now six-month old charges back into its account, which Micro is again defending.

### iii. The publication of a defamatory statement.

27. Also in response to Micro's refusal to award a refund, Laurentec created and published to third parties a statement styled as a customer complaint and entitled, "MicroEstimating estimating software-CAUTION". A true and accurate copy of the Laurentec statement is attached at Exhibit B, hereto.

28. The Laurentec statement was false in several respects, wherein it stated that:

   A. "Micro Estimating was never able to get the package running for us"

   B. "They did not complete the training nor did they follow through on their promises."

      C.    "In fact the Micro Estimating's preloaded "demo" showed the software working but it never did for us after we received the disks"

      D.    "There is no accountability and zero customer service"

29. The Laurentec statement accused Micro of fraud and false advertising.

30. The Laurentec statement solicited potential customers of Micro to "feel free to contact us and we will be happy to personally share our experience with them."

31. Laurentec made the statement knowing that it was false.

32. Laurentec's statement was published by Laurentec directly to customers and potential customers across the United States who were generally known in the industry to be seeking cost estimating software solutions.

### iv. The Laurentec and MTI conspiracy.

33. Laurentec also emailed the statement to MTI, who is Micro's direct competitor.

34. MTI intentionally and directly published Laurentec's statement to Micro's customers and also potential customers across the United States who were generally known by the industry to be seeking cost estimating software solutions, and who MTI and Micro were competing for.

35. MTI published Laurentec's statement knowing that it was false.

36. MTI and Laurentec's publication of knowing falsehoods to customers and potential customers of Micro was done for the express common purpose of defaming Micro in the industry.

37. MTI and Laurentec's publication was also done for the express purpose of harming

Micro's ability to compete with MTI.

38. On information and belief, MTI and Laurentec engaged in this activity as a common plan to harm Micro.

## COUNT I
## DEFAMATION

39. Plaintiff realleges and incorporates the foregoing paragraphs herein.

40. The defamatory statement published by the Defendants is false and was made with knowledge of its falsity or a reckless disregard for its truth.

41. Plaintiff is entitled to damages according to its proof at trial.

## COUNT II
## INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS RELATIONS

42. Plaintiff realleges and incorporates the foregoing paragraphs herein.

43. The Defendants, intentionally and unlawfully published defamatory statements concerning Plaintiff calculated to cause Plaintiff damage in its various business relations, which statements, among other things, have caused Plaintiff to lose customers and contracts.

44. Plaintiff is entitled to damages according to its proof at trial.

## COUNT III
## CIVIL CONSPIRACY

45. The Plaintiff realleges and incorporates the foregoing paragraphs herein.

46. The Defendants were engaged in a common plan to commit the aforementioned tortious acts, for the express purpose of harming the Plaintiff and its position and reputation in the industry and took affirmative steps to achieve that result.

47. Plaintiff has been damaged according to its proof at trial.

## COUNT IV
## VIOLATION OF THE SHERMAN ANTITRUST ACT

48. The Plaintiff realleges and incorporates the foregoing paragraphs herein.

49. The Defendants entered into a conspiracy that was intended to be and for practical purposes became a restraint on trade, which restraint was unreasonable.

50. The effect of Defendants' restraint on trade was that MTI obtained an unreasonable competitive advantage over Micro in obtaining sales contracts.

51. Plaintiff has been damaged according to its proof at trial.

## COUNT V
## VIOLATION OF THE LANHAM ACT (15 U.S.C. §1125(a)(1)(A)

52. The Plaintiff realleges and incorporates the foregoing paragraphs herein.

53. The Defendant MTI intentionally and knowingly made patently false or misleading statements of material fact about Micro's product in advertising or promoting its own competing product throughout the United States.

54. The statement deceived actual and potential customers of Micro and influenced customers' purchasing decisions, causing the Plaintiff to lose many sales.

55. Plaintiff has been damaged according to its proof at trial.

**WHEREFORE**, Plaintiff Micro Estimating Systems, Inc. requests that this Honorable Court grant the following relief:

a) Award Plaintiff preliminary and permanent injunctive relief prohibiting Defendants from further publishing Laurentec's defamatory statement;

b) As to Counts I-V, award Plaintiff damages according to its proof at trial, together with interest and costs;

c) As to Counts IV award Plaintiff multiple damages and reasonable attorneys' fees;

d) As to Count V, award Plaintiff reasonable attorney's fees; and

e) Grant such other and further relief as this Court deems appropriate.

**PLAINTIFF CLAIMS A JURY TRIAL**

Respectfully Submitted,
Micro Estimating Systems, Inc.,
By Its Attorney,


 /s/ Robert S. White
Robert S. White, BBO# 552229
BourgeoisWhite, LLP
One West Boylston Street, Suite 307
Worcester, MA 01605
Telephone: (508) 753-7038
rsw@bourgeoiswhite.com

Dated: June 12, 2012