```
                   UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS


MICRO ESTIMATING              )
SYSTEMS, INC.,                )
         Plaintiff            )
                              )
                    v.        )    C.A. No. 12-cv-30107-MAP
                              )
                              )
LAURENTEC, LLC and            )
MTI SYSTEMS, INC.,            )
         Defendants           )
```

### MEMORANDUM AND ORDER RE: DEFENDANT LAURENTEC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
(Dkt. No. 13)

March 29, 2013

PONSOR, U.S.D.J.

### I. INTRODUCTION

This lawsuit arises from a soured business relationship and an unflattering letter that followed. Plaintiff Micro Estimating Systems filed a five-count complaint in this court, invoking subject matter jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332 (a)(1). One of the defendants, Laurentec, LLC ("Defendant"), a South Carolina company, has moved to dismiss for lack of personal jurisdiction. For the reasons set forth below, the court will allow Defendant's motion.

### II. FACTS

In considering a motion to dismiss for absence of

personal jurisdiction, the court will "accept the allegations in the complaint as true and construe the facts in the light most favorable to the plaintiff." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 24 (1st Cir. 2008). To the extent that they are not challenged by the plaintiff, the court will also consider facts put forward by the defendant. Bluetarp Fin., Inc. v. Matrix Const. Co., Inc., --- F.3d ---, 2013 WL 765123, at *4 (1st Cir. March 1, 2013). The relevant facts in this case are not in dispute and are drawn from Plaintiff's Complaint (Dkt. No. 1) as well as the declaration filed by Defendant in support of the motion to dismiss (Dkt. No. 15).

Plaintiff Micro Estimating Systems, a Wisconsin corporation whose principal place of business is in Brookfield, Wisconsin, developed and licensed a software program that provided cost estimations for companies in the tooling industry. Defendant, a South Carolina limited liability company, sought such software for its company. Defendant contacted both Plaintiff and co-Defendant MTI Systems, a Massachusetts-based company that is Plaintiff's direct competitor, about purchasing their products. Defendant ultimately selected Plaintiff's product instead of that of MTI Systems. When Defendant informed MTI Systems of its decision, MTI Systems cautioned against the decision and

asked to hear how it worked out in the end for Defendant.

In September 2011, Plaintiff and Defendant entered into an agreement for the licensing of the software as well as installation, training, and technical assistance. The agreed-to price was $32,785, which Defendant paid in full in several installments using an American Express credit card. Plaintiff installed the software, provided approximately twelve hours of training, responded to customer assistance calls, and agreed to install a software upgrade at no extra cost.

On December 15, 2011, four months into the contract and ten days after the final payment, Defendant requested a full refund and expressed an intention to return the software. Defendant claimed that its employees had problems using Plaintiff's product and that the software was not as fast as expected. On December 21, 2011, the day after it failed to attend a scheduled training with Plaintiff, Defendant again demanded a full refund. Plaintiff refused, citing its policy barring refunds after four months of use. Defendant filed an unsuccessful complaint with American Express, attempting to stop its credit card payment.

Defendant then authored a customer complaint letter entitled "MicroEstimating estimating software - CAUTION!" that described Defendant's unhappiness with Plaintiff and

its product.  Plaintiff now asserts that several statements in Defendant's letter were false and defamatory.  Defendant sent this letter via email to several employees of Plaintiff and sent an email copy to co-Defendant MTI Systems.  Thereafter, MTI Systems published Defendant's letter to several current and prospective customers of Plaintiff.  Plaintiff alleges that Defendant and MTI Systems worked together to malign Plaintiff with prospective customers.

Plaintiff brought this suit against Defendant and MTI Systems in five counts: defamation (Count I), intentional interference with advantageous business relations (Count II), civil conspiracy (Count III), violation of the Sherman Antitrust Act (Count IV), and violation of the Lanham Act (Count V).  Defendant now moves pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss for lack of personal jurisdiction.

In support of its motion, Defendant submits the declaration of its executive manager, Sean Raimbeault.  (Dkt. No. 15.)  Through this declaration, Defendant asserts that it is a limited liability company organized under the laws of South Carolina, with its principal place of business in Summerville, South Carolina.  In the summer of 2011, Defendant solicited business from co-Defendant MTI Systems, a company located in Massachusetts, but elected Plaintiff's

product. Defendant further alleges that its only other contact with Massachusetts involved sending via email a copy of its customer complaint letter to MTI Systems sometime around December 2011. Defendant asserts that it is not registered with the Massachusetts Secretary of State to conduct business in the state, does not maintain any real or personal property in Massachusetts, has no employees or agents in the state, and neither transacts nor solicits business here.

### III. DISCUSSION

A plaintiff bears the burden of establishing that the court may exercise personal jurisdiction over a defendant. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A. et al., 290 F.3d 42, 50 (1st Cir. 2002). A plaintiff must make a prima facie showing of personal jurisdiction, based on specific facts set forth in the record, that satisfies both Massachusetts' long-arm statute and the due process clause of the Constitution.[1] Boit v. Gar-Tec Prods., Inc.,

---

[1] The First Circuit has set forth three standards that a district court may employ in evaluating a motion to dismiss for want of personal jurisdiction: the prima facie standard, the preponderance-of-the-evidence standard, and the likelihood standard. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145-147 (1st Cir. 1995). Which standard to use depends on whether there are disputed questions of fact surrounding the jurisdictional issue and on how closely related those disputed facts are to the underlying claims.

967 F.2d 671, 675 (1st Cir. 1992).  A plaintiff "may not rely on unsupported allegations in [its] pleadings to make a prima facie showing of personal jurisdiction."  Id.  Rather, it "must go beyond the pleadings and make affirmative proof."  Chlebda v. H.E. Fortna & Bro., Inc., 609 F.2d 1022, 1024 (1st Cir. 1979).  The court should not act as a factfinder but should "accept[] properly supported proffers of evidence by a plaintiff as true."  Boit, 967 F.2d at 675.  With these standards in mind, the court will first outline the parameters of the law of personal jurisdiction and then apply those principles to this case.

A. Personal Jurisdiction Law

"Personal jurisdiction may be either general or specific."  Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010).  The court may exercise general jurisdiction over a defendant when the defendant "has engaged in 'continuous and systematic activity' in the forum, even if the activity is unrelated to the suit."  Daynard, 290 F.3d at 51.  The court may exercise specific jurisdiction over a defendant where the suit "arises directly out of, or relates to, the defendant's forum-based contacts."  Cossaboon, 600 F.3d at 31 (internal quotations

---

Id.  Because there are no factual disputes as to the basis for jurisdiction, the prima facie standard is the proper one here.

-6-

omitted). The parties here agree that there is no basis by which the court could exercise general jurisdiction over Defendant. Accordingly, the question before the court is whether the court may exercise specific jurisdiction over Defendant.

There are two requirements that must be met for the court to exercise specific jurisdiction over a defendant. Generally, a court must first assess whether the Massachusetts long-arm statute grants jurisdiction. Daynard, 290 F.3d at 52. However, because the Massachusetts long-arm statute has been construed to confer jurisdiction to the full extent permitted under the due process clause of the Constitution,[2] the court may "side-step the statutory

---

[2] Defendant contends that Plaintiff cannot satisfy either of the two bases provided under the Massachusetts Long-Arm Statute for the exercise of personal jurisdiction on which it relies. First, Defendant argues that if Plaintiff were to proceed under subsection (c), it would need to show that Defendant's act or omission in Massachusetts caused tortious injury elsewhere. Mass. Gen. Laws ch. 223A, § 3(c). Because any allegedly tortious action Defendant took occurred in South Carolina, not Massachusetts, section 3(c) is inapplicable. Second, Defendant argues that if Plaintiff were to proceed under subsection (d), it would need to show that Defendant's act or omission elsewhere caused tortious injury in state and that Defendant "regularly does or solicits business, or engages in any other persistent conduct ... in this commonwealth." Id. § 3(d). Because any tortious injury allegedly caused by Defendant did not take place in Massachusetts, but rather in Wisconsin where Plaintiff operates, section 3(d) is inapplicable.
  Because the court concludes that Plaintiff cannot show that the exercise of personal jurisdiction would comply with the due process requirements of the Constitution, it need not

inquiry and proceed directly to the constitutional analysis." Id. (moving directly to the constitutional analysis because Massachusetts' long-arm statute is co-extensive with the Due Process Clause of the Constitution); Bluetarp Financial, Inc., 2013 WL 765123, at *5 (same with respect to Maine's long-arm statute).

The second requirement directs the court to determine if "the exercise of jurisdiction under the statute is consistent with the constitution." Daynard, 290 F.3d at 52. The First Circuit has formulated an analytic model involving three components to evaluate in determining whether specific jurisdiction exists: (1) relatedness, (2) purposeful availment, and (3) reasonableness. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995). In evaluating the first prong, the court must determine whether the cause of action arises directly out of the defendant's specific contacts with the forum state. Sawtelle v. Farrell, 70 F.3d 1381, 1390 (1st Cir. 1995). This inquiry focuses on whether there is a "nexus" between the defendant's forum-based activity and the plaintiff's cause of action. Ticketmaster-New York, Inc. v. Alioto, 26

---

resolve the state law questions. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 205-06 (1st Cir. 1994) (choosing to bypass the "murky" state statutory inquiry because the case could not meet the constitutional requirements).

F.3d 201, 206 (1st Cir. 1994).

To satisfy the second prong, the court must determine whether the defendant's contacts "represent a purposeful availment by the defendant[] of the privilege of conducting business" in the forum; the key elements to consider here are "voluntariness and foreseeability." Sawtelle, 70 F.3d at 1391.  Finally, to satisfy the third prong, the court must evaluate whether the exercise of jurisdiction is reasonable in light of the five Gestalt factors. United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).  The "Gestalt factors" are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Cossaboon, 600 F.3d at 33 n.3.

B. Analysis

The only issue facing the court is whether Plaintiff has demonstrated that any exercise of personal jurisdiction over Defendant would comport with the requirements of due process, specifically with the three components laid out by the First Circuit.

First, Plaintiff must show that its claims directly

rise out of, or relate to, Defendant's in-state activities. For this prong, Plaintiff relies on Defendant's one-time activity of forwarding a letter via email to a Massachusetts company.  On the question of whether sending a single letter via email constitutes in-state activity sufficient to establish relatedness with respect to Plaintiff's claims, the precedents are not entirely clear.  Compare Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972) (stating that if a defendant sends a false statement into a state, knowing that a resident in that state would be harmed by that statement, the defendant has "acted within that state"), and First Act, Inc. v. Brook Mays Music Co., 311 F. Supp. 2d 258, 260-1 (D. Mass. 2004) (concluding that the plaintiff met the relatedness requirement where defendant sent one email to sixty Massachusetts residents and that email was the basis of the lawsuit), with Phillips, 530 F.3d at 27-8 (stating that it was unlikely that the plaintiff made an adequate showing of relatedness where the defendant had drawn up a contract out of state and merely mailed it to the plaintiff for signature), and Ticketmaster-New York, Inc., 26 F.3d at 207 (concluding that the nexus between the plaintiff's cause of action and defendant's in-state activities was weak where the defendant made allegedly defamatory comments in a phone interview with a

Massachusetts newspaper that then published the comments). Because the contents of the letter are the subject of this lawsuit, and giving Plaintiff the benefit of the doubt on the law, the court will assume that Plaintiff has made a minimum showing on the relatedness prong.

Second, Plaintiff must show that Defendant's forum contact evinces a "purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1089. The two key factors to consider under this prong are voluntariness and foreseeability. Bluetarp Fin., Inc., 2013 WL 765123, at *7. Though Defendant's actions in forwarding the letter via email to a Massachusetts business are certainly voluntary, the court cannot conclude that Defendant should have known it was rendering itself liable to suit in Massachusetts by the Wisconsin corporation that was the subject of the letter. Cf. Phillips, 530 F.3d at 29 (stating that the defendant could not have foreseen that it would be liable to suit in Massachusetts in "mailing a contract with full terms to Massachusetts for signature and following up with three emails concerning the logistics of signing the contract").

Similarly, it would be unfair to assume that Defendant should have foreseen that MTI Systems would publish the letter to Plaintiff's current and prospective customers, thus causing injury to Plaintiff.

Even if the court could conclude that Plaintiff has made "the most marginal of showings" under this second prong -– see, Ticketmaster-New York, Inc. 26 F.3d at 209 (concluding that the plaintiff made such a showing under the purposeful availment prong where it demonstrated that the defendant could have foreseen the injury to the plaintiff, but not that the defendant's forum-based actions were voluntary) –- the clear inability of Plaintiff to satisfy the Gestalt factors makes dismissal unavoidable here.

The First Circuit has described the Gestalt factors as operating as part of a sliding scale analysis:

> [T]he weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposeful-ness.

Id. at 210.  As already noted, Plaintiff's showing on the first two prongs is weak.  Accordingly, Defendant need not make a strong showing of unreasonableness.  Nevertheless, Defendant's showing is robust on three of the five Gestalt

factors.[3]

First, as a corporation of South Carolina with its principal place of business located there, Defendant's burden of appearing in Massachusetts is onerous. See id. at 210. Second, Massachusetts has no strong interest in exercising jurisdiction over this suit where neither the injured party nor the tortious injuries are found within the state. Third, it would not be significantly more convenient for Plaintiff to try the case here as opposed to its own state or Defendant's. See id. As to the fourth and fifth Gestalt factors, neither party is favored.

Admittedly, there are cases where personal jurisdiction has been exercised over out-of-state defendants who sent emails to Massachusetts residents or posted on message boards where the defendant knew Massachusetts residents would be reading the comments. Abiomed, Inc. v. Turnbull, 379 F. Supp. 2d 90 (1st Cir. 2005); First Act, Inc., 311 F. Supp. 2d at 258. These cases relied on the First Circuit's conclusion in Murphy v. Erwin-Wasey, Inc. that "[w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury

---

[3] As stated earlier, the five Gestalt factors are (1) the burden of appearance, (2) the forum's interest, (3) the plaintiff's convenience, (4) the administration of justice, and (5) the pertinent policy arguments.

<u>of a resident of that state</u>, he has, for jurisdictional purposes, acted within that state." 460 F.2d at 664 (emphasis added). What clearly distinguishes this case from <u>Murphy</u> (and the cases that rely on its holding) is that, in every one of those cases, the plaintiff was a Massachusetts corporation or citizen suing in its own forum. Plaintiff here is <u>not</u> a forum resident; it is a Wisconsin corporation. This fact operates to undermine Plaintiff's arguments on the foreseeability of Defendant's being called into court here, as well as on the reasonableness of any exercise of personal jurisdiction given the minimum contacts Defendant has had in this forum.

In sum, the balance of the factors tilt away from an exercise of jurisdiction over Defendant being "consistent with principles of justice and fair play." <u>Bluetarp Financial, Inc.</u>, 2013 WL 765123, at *8. The only forum contact alleged by Plaintiff is a single letter sent via email from Defendant to Plaintiff in which a Massachusetts corporation was copied. Other than the letter being sent via email into the hands of a forum-based competitor who used it to gain competitive advantage, neither Plaintiff nor its injuries are located in Massachusetts. Plaintiff's showing on the relatedness and purposeful availment prongs of the specific jurisdiction analysis are, as noted,

distinctly weak.  See Ticketmaster-New York, Inc., 26 F.3d at 207 (finding the plaintiff's showing of relatedness to be weak in part because "the link between the defendant's conduct and the cause of action is attenuated by the intervening activities of third parties"); Phillips, 530 F.3d at 28-9 (finding that though the defendant's mailing a contract into the forum was voluntary, it could not alone "constitute sufficiently purposeful availment to allow for the exercise of jurisdiction").  For the reasons stated above, analysis of the Gestalt factors heavily favors Defendant.  As Plaintiff has not met its burden to show that the exercise of personal jurisdiction over Defendant would fall within the limits of due process, the court will allow Defendant's motion to dismiss for lack of jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the court hereby ALLOWS the Motion to Dismiss for lack of personal jurisdiction filed by Defendant Laurentec, LLC.  (Dkt. No. 13.)  This matter will be referred to Magistrate Judge Kenneth P. Neiman for a pretrial conference regarding claims against the remaining defendant.

It is So Ordered.

    /s/ Michael A. Ponsor  
    MICHAEL A. PONSOR  
    U. S. District Judge